## St. Louis, Iron Mountain & Southern Railway Company v. Rodgers.

### Opinion delivered May 11, 1914.

Railroads—death of employee—negligence—sufficiency of evidence.
—Deceased, an employee of defendant railroad company, was brakeman on a caboose which was "kicked" down a sidetrack. The caboose collided with other cars and deceased received the injuries which resulted in his death; *held*, under the evidence there was no negligence on the part of defendant, as the caboose was not running at an excessive speed and the brakes were in perfect order, so that deceased might have applied them, and that other employees gave him signals to apply the brakes.

Appeal from Clark Circuit Court; *C: W. Smith*, Special Judge; reversed.

*E. B. Kinsworthy, R. E. Wiley* and *T. D. Crawford*, for appellant.

1. The first instruction was abstract.

2. The court erred in giving plaintiff's instruction No. 3. 201 Fed. 591. The Federal act governs. 229 U. S. 146; 229 *Id.* 156; 130 Pac. 897.

3. The court should have directed a verdict for defendant. There was no negligence. It was the universal

custom to make flying switches. 3 Labatt, Master &. Servant, § 1126, p. 2986.

4. The employee assumed the risk. 1 White on Personal Injuries, § 357.

*McRae & Tompkins,* for appellee.

1. There is no error in the instructions. The action was not brought under the Federal statute. 223 U. S. 1; 149 Ia. 51; 223 U. S. 711; 229 *Id.* 114-121.

2. The rule as to flying switches was broken. 3 Labatt, Master & Servant, § 909; 10 Enc. Ev. 570.

McCULLOCH, C. J. This is an action instituted by the administratrix of the estate of one James Rodgers, deceased, against the St. Louis, Iron Mountain & Southern Railway Company to recover damages resulting to the estate and next of kin on account of the death of said James Rodgers, which is alleged to have been caused by the negligence of the defendant.

Rodgers was a rear brakeman running on one of defendant's freight trains on the Gurdon branch operated between Gurdon, Arkansas, and Ferriday, Louisiana. The train had come from El Dorado and reached Gurdon in the early part of the night. There are numerous tracks at Gurdon, one of which is a spur track called the brickyard spur, where it is customary to store cabooses. On the arrival of a freight train, the rules require that the caboose be run in on this spur track and stored there. This is usually done by throwing the caboose in on that track by a flying switch. There was a hand brake on the caboose operated from the cupola. This brake was frequently used while the train was in operation for the purpose of preventing the cars in the train from bunching when going down hill, and also for the purpose of controlling the caboose when it was disconnected from the other cars, such as when it was thrown on the sidetrack or spur to be stored. It was the duty of Rodgers, being the rear brakeman, to place himself in the cupola of the caboose when it was to be thrown in on the spur track, and to control the movement of the caboose after the engine cut loose from it. On this occasion, when the crew was

ready to make the flying switch, Rodgers went into the cupola of the caboose and gave the signal for the engineer to proceed to make the switch. The caboose was thrown in on the spur, but for some reason or other undisclosed in the evidence, the speed of the caboose was not checked or controlled, and it crashed into two other cabooses standing on the spur. No one was in the caboose at the time but Rodgers, but as soon as the impact occurred, other members of the crew went in and found Rodgers lying struggling on the floor with his throat cut. He had evidently been thrown against the glass window of the caboose and his head thrust through the glass, which broke and inflicted the cuts. A surgeon was summoned to his aid, but he bled to death, life becoming extinct in about thirty minutes after the injury occurred. He evidently suffered great pain, for witnesses testified that he made considerable effort to speak to them, but was unable to do so on account of the accumulation of blood in his throat.

The act of negligence set forth in the complaint is that the "night was dark and defendant's servants carelessly and negligently ran said caboose upon the sidetrack with such unusual force and at such a dangerous speed that the deceased, who was in the cupola of said caboose, where his duties required him to be, was unable to check the speed of said caboose, and when said caboose struck the cars standing upon said sidetrack, he was thrown forward against the glass in the window of said caboose with such force, that the glass was broken, and his head was driven through the glass and his throat cut."

There are several assignments with respect to the giving and refusing of instructions; but we will only discuss the testimony in the case, for we have reached the conclusion that it was insufficient to sustain the charge of negligence. The uncontradicted testimony is, we think, to the effect that the flying switch was made in the ordinary method, and that Rodgers frequently was engaged in making the switch just in the manner in which it was made on this occasion.

There is a slight variance in the testimony as to the speed the caboose was going at the time the engine was released from it, some of the witnesses putting it at from four to six miles, and some at seven or eight miles; but they all agree that the speed which it was going at the time was the customary speed in making that switch.

There is some testimony tending to show that the switch could have been made at a less speed than that; but testimony of that character is not sufficient to establish negligence, for the reason that the uncontradicted evidence is that it is perfectly safe to cut the caboose loose while running at a speed of seven or eight miles an hour with a hand brake on it with which to control the movement. The fact that it could have been switched at a lower rate of speed does not make out a case of negligence.

Two or three witnesses introduced by the plaintiff testified that they heard the impact of the caboose against the other two cabooses standing on the spur track, and that it made an unusual noise, in fact, it resounded with a great crash. The evidence is, too, that the two cabooses on which the brakes were set were driven a distance of about fifteen feet by the impact of this caboose, and that the two cabooses were injured by the impact.

This testimony only shows, however, that the caboose in which Rodgers was riding came against the other cabooses with tremendous impact; but that resulted from the failure to apply the brake and does not establish a greater rate of speed than that mentioned by the other witnesses, as all stated that it was not running at an unusual rate of speed. It only proves that the caboose was not under control, and that its speed was considerable when it struck the others on the spur, but it does not tend to fix a rate of speed greater than that described by the other witnesses, and, therefore, raised no conflict in the testimony which called for a submission of the issue to the jury. In other words, the uncontradicted evidence of the witnesses who testified with reference to the speed of the caboose at the time the engine was released from

it shows that it was not running at an unusual speed while doing that work, and that the cause of the impact was the failure to apply the brake. The witnesses all say that instead of the caboose being controlled by Rodgers soon after the engine was released, it began to pick up speed as it went down the spur, which was down grade. The caboose ran a distance of 515 feet from the time the engine cut loose from it to the point it collided with the other cabooses. Witnesses say that during this time it was picking up speed instead of lessening it, and that when they noticed the brake was not being applied, several of them hallooed to Rodgers to put on the brakes, and that the engineer gave the signal from his engine to set the brake.

There are no circumstances, we think, which can fairly be said to contradict the statements of these witnesses as to the momentum which was given to the caboose before it was cut loose from the engine, and we are of the opinion that there is no negligence shown, but that the injury occurred solely on account of the failure to apply the brake and control the caboose after it was separated from the engine. The injury, therefore, resulted from accidental cause and without fault, so far as the evidence shows, on the part of any one, unless it be that of the deceased himself.

There is no allegation in the complaint that there was anything wrong with the brake, and no charge of negligence in that regard. All the testimony shows that the caboose was a new one, and that the brake was in good working order. Several of the witnesses used the brake immediately before and immediately after the accident. One of the witnesses testified that he went in and tried the brake as soon as the caboose stopped, and it was ascertained that Rodgers was injured. He stated that the brake was not set and that it was in perfect working order.

There is a suggestion in the testimony that the chains on hand brakes sometimes fail to wind properly and thus interfere with the use of the brake; and it may

be that this prevented the use of the brake in this instance. Rodgers was an experienced brakeman, having been working on the road about eleven months, and frequently doing this particular kind of work. The witnesses describe him as being a good brakeman, who knew what was required of him, and it is difficult to believe, under the circumstances, that he failed to discharge his duty, and yet there is no satisfactory reason found in the record why the brake was not applied. We need not indulge in conjecture on that point, however, for, conceding that he made every reasonable effort to control the car, it is uncontradicted that the speed was not an unusual or dangerous one; that the car could have been controlled while going at that rate of speed and that for some reason or other the brake was not used and the speed of the car was not controlled.

Counsel for plaintiff attempt to sustain the judgment on negligence in attempting to put the car in on the spur track with a flying switch.

There is no charge of negligence of that kind in the complaint, but some of the witnesses testified that there was a rule of the company against using the flying switch except in case of emergency and when the track and switches were in good condition.

The evidence is, however, uncontradicted that this rule was habitually disregarded to the extent that it amounted to an entire abrogation of the rule, for all of the train men testified that the invariable custom was to store cabooses on sidetracks or spur tracks in that manner. If that was the unvarying custom it amounted to an abrogation of the rule and became one of the incidents of the service, the danger from which the deceased assumed when he took service.

Deceased met his death while in the line of his duty and as the result of a shocking accident, which naturally excites the sympathy of all, but we are unable to discover any testimony in this record which is sufficient to warrant the finding that any of the members of the train crew were guilty of negligence in switching the caboose,

or in the method in which it was done. The verdict is therefore unsupported by the testimony and the judgment must be reversed for that reason. Reversed and remanded for a new trial.

HART, J., dissents.